UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
MIGUEL ANGEL GIL MORENO,        :

                  :      **REPORT AND**

           Plaintiff,   :      **RECOMMENDATION**

                  :

    -against-         :      24-CV-3120 (NGG)(PK)

                  :

CAPITAL CONCRETE NY INC. and OCEAN :
SKY SERVICES LLC,           :

                  :

          Defendants.  :
---------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

    Miguel Angel Gil Moreno ("Plaintiff") brought this action against Capital Concrete NY Inc. ("Capital Concrete") and Ocean Sky Services LLC ("Ocean Sky") (collectively, "Defendants") for violations of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and (3) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* (*See* "Compl.," Dkt. 1.) Plaintiff has filed a Motion for Default Judgment against Defendants. ("Motion," Dkt. 19; *see also* "Mem.," Dkt. 20.) The Honorable Nicholas G. Garaufis referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Factual Background**

    The following facts are taken from the Complaint, Declaration of Melissa Vo, Esq. in Support of the Motion ("Vo Decl.," Dkt. 21), Plaintiff's Affidavit ("Moreno Aff.," Dkt. 21-1), and Plaintiff's Supplemental Affidavit ("Moreno Supp. Aff.," Dkt. 25.) These facts are accepted as true for purposes of this Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

    In June 2020, Defendants—construction companies licensed to do business in the State of

New York—hired Plaintiff to work as a "carpenter and concrete worker" at 320 Dewitt Avenue, Brooklyn, NY 11207.  (Compl. ¶¶ 9, 12, 18; Moreno Aff. ¶ 1.)  Each Defendant employs fifteen or more employees.  (Compl. ¶¶ 11, 14.)  Capital Concrete issued Plaintiff's paychecks and handled payroll, set his work schedule and daily assignments, provided construction tools and materials, supervised his day-to-day work activities, and maintained worker safety protocols.  (Moreno Supp. Aff. ¶ 3.)  Ocean Sky Services managed and coordinated construction projects where Plaintiff worked, provided oversight and direction for construction operations, had authority over hiring, firing, and employment decisions, shared control over the terms and conditions of Plaintiff's employment, and worked in conjunction with Capital Concrete to manage the workforce.  (*Id.* ¶ 4.)

Plaintiff was responsible for gathering and distributing construction tools, distributing wood pieces and concrete, measuring and cutting wood planks, shaping wood planks, plastic and other materials, preparing concrete for pouring, and occasionally assisting other construction workers.  (Compl. ¶ 20; Moreno Aff. ¶ 4.)  Plaintiff worked between 8 and 12 hours a day, from 7:00 a.m. to 5:00 a.m., from Monday to Friday.  (Compl. ¶ 19; Moreno Aff. ¶¶ 3, 24.)  Plaintiff earned $34 per hour and "constantly would work an additional 2 to 4 hours per day as the workday required it."  (Moreno Aff. ¶ 24.)

Plaintiff worked under the supervision of individuals named Alfredo, his immediate supervisor, and Rafael from the Human Resources Office.  (*Id.* ¶ 3.)  Both Alfredo and Rafael had the authority to make employment decisions on behalf of Defendants.  (Moreno Supp. Aff. ¶ 5.)

On July 10, 2022, Plaintiff was on his way home after his work shift, when he fainted for eight minutes.  (Compl. ¶ 22; Moreno Aff. ¶ 7.)  Plaintiff was taken to the hospital that same day and was diagnosed with cardiomyopathy and congestive heart failure, which affected his heart rhythm and necessitated 15 days of hospitalization in preparation for surgery.  (Compl. ¶¶ 23-24; Moreno Aff. ¶ 7.)  On July 11, 2022, Plaintiff called and messaged Alfredo and Rafael about his diagnosis, the need

for hospitalization and surgery, as well as his plans to return to work after his recovery.  (Compl. ¶¶ 25-26; Moreno Aff. ¶ 8.)

After a successful surgery, Plaintiff was discharged from the hospital on July 24, 2022.  (Compl. ¶¶ 27-28; Moreno Aff. ¶¶ 9-10.)  That same day, Plaintiff informed Alfredo and Rafael that the surgery was successful, that he needed a few more days to recover, and that he could be scheduled to return to work thereafter.  (Compl. ¶¶ 27-28; Moreno Aff. ¶¶ 9-10.)

On July 29, 2022, Plaintiff provided a medical note to Alfredo stating that he was cleared to return to work and resume his full responsibilities.  (Compl. ¶ 29; Moreno Aff. ¶ 11.)  On August 1, 2022, Plaintiff contacted Rafael to discuss returning to work and provided him with the same medical note.  (Compl. ¶ 30; Moreno Aff. ¶ 12.)  Rafael told Plaintiff that "he would be discussing the situation with Alfredo," and that the medical note was "not sufficient due to the sensitive nature of Plaintiff's disability."  (Compl. ¶ 31; Moreno Aff. ¶ 12.)  Rafael further requested Plaintiff to obtain a new medical note stating "that the work is in construction, that you are able to work 8 hours a day or more, that you are able to lift 50 pounds, and that your last surgery will not affect your work rhythm."  (Compl. ¶ 32; Moreno Aff. ¶ 12.)

On August 10, 2022, Plaintiff provided Alfredo with a new medical note that included all of the language requested by Rafael.  (Compl. ¶ 34; Moreno Aff. ¶ 14.)  Alfredo responded that he would call him back upon reviewing the new medical note.  (Compl. ¶ 35; Moreno Aff. ¶ 14.)

On August 17, 2022, Plaintiff contacted Rafael for an update regarding his request to return to work.  (Compl. ¶ 36; Moreno Aff. ¶ 15.)  Rafael informed Plaintiff that he was waiting for the company director's decision.  (Compl. ¶ 36; Moreno Aff. ¶ 15.)

After not receiving any response from Rafael, Plaintiff followed up with Alfredo on August 25, 2022, and reminded him that he was at "full health" and able to resume full responsibilities.  (Compl. ¶ 37; Moreno Aff. ¶ 16.)  Alfredo responded: "you are an excellent worker, but the boss says

that he doesn't want to risk something happening to you in the future while at work and that you are going to say [it] is the companies['] fault."  (Compl. ¶ 38; Moreno Aff. ¶ 17.)  That same day, Plaintiff discovered that he no longer had access to the Defendants' electronic service system and that he had been terminated.  (Compl. ¶ 40; Moreno Aff. ¶ 18.)

In the following days, Plaintiff made "several calls and several attempts" to contact Alfredo and Rafael to discuss his employment, but they neither answered nor returned his calls.  Plaintiff was unable to find comparable employment until January 25, 2023.[1]  (Moreno Aff. ¶ 19; Moreno Supp. Aff. ¶ 15.)  Plaintiff is currently employed by a construction company, earning $34 per hour and working approximately 50 hours per week.  (Moreno Supp. Aff. ¶ 15.)

After his termination, Plaintiff suffered from emotional distress, including severe depression and anxiety, frequent hopelessness about his future, constant worry about his ability to support his family, chronic insomnia, frequent nightmares about returning to work and facing discrimination, loss of self-worth and confidence, tremendous financial stress, intense humiliation, loneliness, fear that other employers will treat him the same way, headaches, stomach problems, loss of appetite, and increased cardiac symptoms that require ongoing monitoring by his physician.  (*Id.* ¶¶ 7-13.)

Plaintiff continues to experience emotional distress.  (*Id.* ¶ 14.)  His symptoms have not diminished over time and "fundamentally changed [his] outlook on life and work, leaving lasting psychological scars."  (*Id.*)

## II.    Relevant Procedural Background

Plaintiff received a Notice of Right to Sue dated January 29, 2024, from the Equal Employment Opportunity Commission ("EEOC").  (Compl. ¶¶ 5-6; "Right to Sue Letter," Ex. A to Compl.)  Plaintiff filed the Complaint on April 25, 2024.  (Dkt. 1.)

---

[1] In his initial Affidavit, Plaintiff alleged that he was unable to work or find comparable employment until December 2022, not January 25, 2023.  (Moreno Aff. ¶ 25.)

On May 10, 2024, Plaintiff served the Summons and Complaint on both Defendants via the New York Secretary of State. (Affs. of Service, Dkts. 8, 9.) No Defendants appeared or otherwise answered the Complaint and, on November 5, 2024, a certificate of default was entered against Defendants. (Dkt. 16.)

Plaintiff filed the Motion on January 17, 2025, requesting default judgment against Defendants. (Dkt. 19.) On July 9, 2025, the Court held an inquest and directed Plaintiff to supplement his motion papers. (July 9, 2025 Minute Entry and Order.) On July 23, 2025, Plaintiff filed a Supplemental Affidavit. (Dkt. 25.)

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The Court may "first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation omitted). Plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

In addition, the Court must also determine whether Plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see also Mickalis*, 645 F.3d at 137. In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and

draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *see also Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

## II.    Jurisdiction and Default

### A.    *Subject Matter Jurisdiction*

The Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state and local law claims under 28 U.S.C. § 1367.

### B.    *Personal Jurisdiction*

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York has general jurisdiction over corporations formed under its laws and operating within the state. *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).

Plaintiff served both Defendants by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. (Affs. of Service, Dkts. 8, 9.) This method of

service complies with federal and state procedural rules. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(e).

The Court has personal jurisdiction over Defendants because they are New York corporations[2] and were properly served. *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022).

### C.    Defendants' Default

Defendants did not appear or otherwise respond to the Complaint, and have, therefore, defaulted.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of this Motion and in compliance with the Local Civil Rules, Plaintiff included a Memorandum of Law in Support of the Motion (Dkt. 20), *see* Loc. Civ. Rule 7.1(a)(2); a declaration showing that the Clerk has entered default (Dkt. 21), *see* Loc. Civ. Rule 55.2(a)(1); a Proposed Default Judgment Order detailing the proposed judgment to be entered (Dkt. 21-9), *see* Loc. Civ. Rule 55.2(a)(2); proof of having mailed the motion papers to Defendants at their last known business addresses (Dkt. 21-6), *see* Loc. Civ. Rule 55.2(a)(3); and a statement of damages affirmed by someone with personal knowledge (Moreno Aff.; Moreno Supp. Aff.; Statement of Costs, Dkt. 21-7; Time Records, Dkt. 21-8), *see* Loc. Civ. Rule 55.2(c). Thus, compliance with the Local Civil Rules is satisfied.

## IV.    Liability

The Complaint alleges causes of action for employment discrimination and retaliation on the basis of his disability in violation of the ADA, NYSHRL, and NYCHRL, and failure to provide reasonable accommodation under the NYCHRL. (Compl. ¶¶ 47-69.)

---

[2] Although the Complaint only alleges that Defendants are "licensed to do business in the State of New York," the Court takes judicial notice that the New York Department of State identifies Defendants as New York corporations. *See Weddington v. Sentry Indus., Inc.*, No. 18-CV-10055 (PKC), 2019 WL 5212355, at *1 (S.D.N.Y. Oct. 16, 2019).

To prevail under the ADA, NYSHRL, and NYCHRL, Plaintiff must first establish the existence of an employer-employee relationship with Defendants. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *Foster v. United Parcel Serv. of Am., Inc.*, No. 18-CV-1706 (NSR), 2025 WL 1745780, at *3 (S.D.N.Y. June 24, 2025); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 80 (S.D.N.Y. 2020). Thus, I consider whether both Defendants properly constitute Plaintiff's "employers" under the federal, state, and municipal laws.

### A. *Employment Relationship*

### 1. <u>ADA</u>

To plead a formal employment relationship under the ADA, a plaintiff must allege that he received some form of remuneration from the putative employer. *See O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997); *Pastor v. P'ship for Children's Rts.*, No. 10-CV-5167 (CBA)(LB), 2012 WL 4503415, at *1 (E.D.N.Y. Sept. 28, 2012), *aff'd*, 538 F. App'x 119 (2d Cir. 2013); *Innes v. Cnty. of Warren*, No. 22-CV-641 (BKS)(TWD), 2024 WL 865864, at *3 (N.D.N.Y. Feb. 29, 2024).

In addition, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (quoting *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). "A joint employer relationship may be found to exist if there is sufficient evidence that the respondent had immediate control over the other company's employees." *Id.* (quoting *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) (per curiam)). Factors relevant to control include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Id.*

Plaintiff's allegation that Capital Concrete issued his paychecks, set his work schedule, and supervised his day-to-day work activities is sufficient to establish that he was formally employed by Capital Concrete.  *See O'Connor*, 126 F.3d at 116.

Plaintiff does not allege that he received remuneration from Ocean Sky Services.  However, he alleges that Ocean Sky Services shared control over the terms and conditions of Plaintiff's employment, and that it had authority over hiring, firing, and employment decisions.  This is sufficient to establish that it had "immediate control" over Plaintiff, and therefore, that it qualifies as Plaintiff's joint employer.  *See Vitti*, 758 F. App'x at 156.

Accordingly, both Capital Concrete and Ocean Sky Services are properly considered Plaintiff's "employers" under the ADA.

## 2.    **NYSHRL and NYCHRL**

The NYSHRL and NYCHRL do not explicitly define the term "employer."  N.Y. Exec. Law § 292 (defining "employer" as "includ[ing] all employers within the state."); N.Y.C. Admin. Code § 8-102 (defining "employer" as excluding "any employer with fewer than four persons in the employ of such employer . . .").  Thus, courts have relied on common-law principles and considered the following factors to determine who may be liable as an employer under the NYSHRL and NYCHRL:  "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct."  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (2017); *Bonterre v. City of New York*, No. 18-CIV-745 (ER), 2021 WL 4060358, at *9 (S.D.N.Y. Sept. 7, 2021).

The analysis of the joint employer doctrine under the NYSHRL and NYCHRL is identical to that under the ADA.  *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (applying "immediate control" test to Title VII, NYSHRL, and NYCHRL claims).

Capital Concrete constitutes Plaintiff's "employer" under the NYSHRL and NYCHRL because it employs fifteen or more employees, paid Plaintiff's wages, and had the power to control

Plaintiff for the reasons discussed above. *See Griffin*, 29 N.Y.3d at 186. Ocean Sky Services qualifies as Plaintiff's joint employer under the statutes because it had "immediate control" over Plaintiff. *See Vitti*, 758 F. App'x at 156.

Accordingly, they are properly considered as Plaintiff's "employer" under the NYSHRL and NYCHRL.

### B.    *Liability for Employment Discrimination*

#### 1.    <u>ADA</u>

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA requires that the term disability "shall be construed in favor of broad coverage of individuals." *Id.* § 12102(4)(A). The ADA prohibits discrimination against qualified individuals on the basis of disability in hiring, advancement, compensation, training, and other employment terms. *Id.* § 12112.

"ADA discrimination claims are subject to the familiar *McDonnell Douglas* burden-shifting analysis, the first step of which is to determine whether the plaintiff has stated a prima facie case of discrimination." *Persechino v. United Servs., Inc.*, No. 22-2762, 2024 WL 1253633, at *1 (2d Cir. Mar. 25, 2024). To state a prima facie case of discrimination under the ADA, "a plaintiff must show by a preponderance of the evidence that: (1) [his] employer is subject to the ADA; (2) [he] was disabled within the meaning of the ADA; (3) [he] was otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodation; and (4) [he] suffered adverse employment action because of [his] disability." *Id.*

##### a.    *Whether Defendants Are Subject to the ADA*

An employer is subject to the ADA if it is "engaged in an industry affecting commerce" and "has 15 or more employees for each working day in each of 20 or more calendar weeks." 42 U.S.C. § 12111(5)(A). Plaintiff alleges that Defendants are construction companies that "employ[] at least

fifteen or more employees."  (Compl. ¶¶ 11, 14; Moreno Aff. ¶ 2; Mem. at 8.)  Plaintiff has, therefore, established that Defendants are subject to the ADA.

### b.    Whether Plaintiff Was "Disabled"

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Whether an individual is 'regarded as' having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability."  *Simmons v. N.Y.C. Transit Auth.*, 340 F. App'x 24, 27 (2d Cir. 2009).  To be regarded as having a disability, "one must be perceived as different from most people in the general population."  *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 168 (2d Cir. 2024).

A plaintiff meets the requirement of being regarded as having an impairment if he establishes that he was subjected to an action prohibited under the ADA because of an actual or perceived physical impairment "whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  Thus, "plaintiff need only establish that defendant regarded him as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [the defendant] believed the impairment affected him.'"  *Rodriguez v. Verizon Telecom*, No. 13-CV-6969 (PKC)(DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting *Hilton*, 673 F.3d at 129).  The EEOC regulations provide interpretive guidance on the meaning of a "physical impairment" under the ADA, to which Second Circuit courts accord "great deference."  *See Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997); *see also Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 647 (S.D.N.Y. 2014).  The EEOC regulations interpret "[p]hysical or mental impairment" to mean any physiological disorder or condition affecting, *inter alia*, the cardiovascular system.  *See* 29 C.F.R. § 1630.2(h)(1).

The Interpretative Guidance on Title I of the ADA offers a helpful example of when an employer regards an employee as being disabled:

> Thus, for example, an employer who terminates an employee with angina from a manufacturing job that requires the employee to work around machinery, believing that the employee will pose a safety risk to himself or others if he were suddenly to lose consciousness, has regarded the individual as disabled.

29 C.F.R. § Pt. 1630, App.  "While not binding, the guidance illustrates the common sense principle that an employer that takes an adverse action because it fears the consequences of an employee's medical condition has regarded that employee as disabled." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1182 (11th Cir. 2019) (discussing 29 C.F.R. § Pt. 1630, App.).

The record sufficiently reflects that Defendants regarded Plaintiff as being physically incapable of meeting the full physical demands of his job due to his conditions post-cardiac surgery.  When Plaintiff provided a medical note stating that he was cleared to return to work and resume full responsibilities, Defendants noted "the sensitive nature of Plaintiff's disability" and demanded that Plaintiff obtain an amended medical note further assuring that his surgery will have no impact on his work.  (Compl. ¶¶ 31-32; Moreno Aff. ¶ 12.)  When Plaintiff provided Defendants with the updated medical note containing the assurances that Defendants required, Defendants still refused to permit Plaintiff to return to work because they did not "want to risk something happening to [Plaintiff] in the future" due to his heart conditions.  (Compl. ¶ 38; Moreno Aff. ¶ 17.)

Courts have found that an employer regards an employee as having a disability where, as here, the employer perceives the employee as being incapable of performing his job requirements.  *See, e.g.*, *Sacks*, 999 F. Supp. 2d at 648 (finding that plaintiff made out a prima facie case of discrimination by showing that defendant "held the perception that Plaintiff could not meet the physical demands of the job" due to his "lack of agility"); *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) ("An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements.")

(cleaned up); *Lewis*, 934 F.3d at 1181-82 (finding sufficient evidence of perceived disability where defendant placed plaintiff—who returned to work with medical clearance after suffering minor heart attack—on leave because "it feared for her safety in view of her heart condition").

Accordingly, I find that Plaintiff was regarded as having a disability within the meaning of the ADA.

### c.    Whether Plaintiff Was Qualified to Perform the Essential Functions of His Job, with or without Accommodation

When Plaintiff returned from his medical leave on July 29, 2022, Plaintiff provided medical notes confirming that he was cleared to return to work and resume full responsibilities, including the functions that Defendants deemed essential, such as working eight hours a day or more and lifting 50 pounds.  (Compl. ¶¶ 29, 32, 34; Moreno Aff. ¶¶ 11-12, 14.)

Accordingly, Plaintiff was qualified to perform the essential functions of his job without any accommodation.

### d.    Whether Plaintiff Suffered Adverse Employment Action Because of His Disability

Termination from employment constitutes an adverse employment action under the ADA. *Sharikov*, 103 F.4th at 167.

When Plaintiff was terminated, Defendants informed him that they did not want to "risk something happening to [him] in the future while at work."  (Compl. ¶¶ 38, 40; Moreno Aff. ¶¶ 17-18.)  This statement indicates that Defendants terminated Plaintiff because of concerns over a potential risk of Plaintiff's heart condition.  Plaintiff, therefore, suffered an adverse employment due to his perceived disability.

For the reasons discussed above, I find that Plaintiff's allegations are sufficient to establish a prima facie case of discrimination under the ADA.  Since Defendants are in default, I further find that Plaintiff has established Defendants' liability for discrimination under the ADA.

### 2.   **NYSHRL and NYCHRL**

In the Second Circuit, "the same elements that must be proven to establish an ADA [discrimination] claim must be also demonstrated to prove claims under NYSHRL and NYCHRL." *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010); *see also Limauro v. Consol. Edison Co. of New York, Inc.*, No. 20-CV-3558 (CM), 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021) ("Practically speaking, because the NYCHRL is more protective than its state and federal counterparts, a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes."); *Rochelle v. AutoZoners, LLC*, No. 21-CV-01220 (PMH), 2023 WL 5935835, at *6 (S.D.N.Y. Sept. 12, 2023); *Miller v. E. Midwood Hebrew Day Sch.*, No. 19-CV-5580 (AMD)(LB), 2021 WL 966166, at *3 (E.D.N.Y. Feb. 15, 2021), *R&R adopted*, 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021).

Plaintiff's NYSHRL and NYCHRL discrimination claims are based on the same allegations as his ADA claims. Plaintiff's allegations, therefore, are also sufficient to establish Defendants' liability for discrimination under the NYSHRL and NYCHRL.

### C.   *Liability for Retaliation*

### 1.   **ADA**

The ADA prohibits retaliation against any individual who has asserted rights under the ADA. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (citing 42 U.S.C. § 12203(a)). The *McDonnell Douglas* burden-shifting framework also applies to ADA retaliation claims. *Rios v. Dep't of Educ.*, 351 F. App'x 503, 505 (2d Cir. 2009). "To establish a *prima facie* case of retaliation under the ADA, a plaintiff is required to show by a preponderance of the evidence that: (1) [he] participated in a protected activity under the ADA; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." *Id.*

### a.  Whether Plaintiff Participated in a Protected Activity

Plaintiff asserts that "Defendants violated [the ADA] by retaliating, and otherwise discriminating against the Plaintiff because he opposed Defendants' unlawful employment actions and because he requested and/or needed a reasonable accommodation." (Compl. ¶ 54). Plaintiff relies solely on *Conway v. Healthfirst Inc.*, No. 21-CV-6512 (RA), 2022 WL 4813498 (S.D.N.Y. Sept. 30, 2022) for the proposition that a "request to participate in an interactive process can constitute protected activity under the ADA . . . ." (Mem. at 10.)  In *Conway*, however, the plaintiff requested a reasonable accommodation to perform the jobs to which he was applying, and the court found that a request for a reasonable accommodation is an ADA-protected activity.  *Id.* at *3.  Here, Plaintiff did not request a reasonable accommodation, nor did he request participation in an interactive process.  (*See* Moreno Aff. ¶¶ 8-17.)  His actions indicated a desire to return to work, not a desire to engage in an interactive process, which has been defined as a process that is initiated by an employee who "possesses the initial responsibility to inform the employer that he needs an accommodation and to identify the limitation that needs accommodating."  *Conway*, 2022 WL 4813498, at *5.  Unlike the plaintiff in *Conway* who "required an accommodation to perform the jobs for which he was applying" and "contacted and spoke with [the defendant's] representatives directly about his need to work remotely," *id.* at *3, Plaintiff did not seek any accommodation or identify any limitation that required accommodating. Rather, Plaintiff assured Defendants that he was at "full health" and able to resume full responsibilities without any accommodation.  (Compl. ¶ 37; Moreno Aff. ¶ 16.)  Thus, I find no basis to conclude that Plaintiff initiated an interactive process, or that he participated in a "protected activity" by doing so.

Plaintiff does not identify any other protected activity in support of his retaliation claim under the ADA.  Plaintiff also does not present any factual basis that supports a finding that he opposed Defendants' unlawful employment actions.  Plaintiff's allegations are, therefore, insufficient to

establish that he participated in a protected activity under the ADA. Accordingly, I find that Plaintiff's allegations are insufficient to establish Defendants' liability for retaliation under the ADA.

### 2. **NYSHRL and NYCHRL**

Plaintiff's retaliation claims pursuant to the NYSHRL and NYCHRL are based on the same allegations as his ADA claims. "[T]he standards for a retaliation claim under the NYCHRL and NYSHRL are more forgiving than under the ADA" because "an adverse employment action is not a required element under NYSHRL and NYCHRL." *McSweeney v. Cohen*, No. 24-CV-01503 (LJL), 2025 WL 966022, at *26 n.16 (S.D.N.Y. Mar. 31, 2025) (citing *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 247 (S.D.N.Y. 2024). However, "the burden on the other three prongs of a prima facie retaliation claim under the federal antidiscrimination law is identical to the NYCHRL and NYSHRL standards." *Id.* (cleaned up).

Because I find that Plaintiff did not sufficiently allege the first element of his retaliation claim under the ADA, Plaintiff also fails to sufficiently allege his retaliation claims under the NYSHRL and NYCHRL. *See Qorrolli*, 124 F.4th 115, 125 (2d Cir. 2024) (affirming dismissal of plaintiff's retaliation claims under NYSHRL and NYCHRL for failure to adduce evidence of engaging in protected activity).

### D. **Liability for Failure to Provide Reasonable Accommodation under the NYCHRL**

Under the NYCHRL, employers are required to "provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job." N.Y.C. Admin. Code § 8-107. Employers must provide reasonable accommodation to employees with actual or perceived disability. *See* N.Y.C. Admin. Code § 8-107(1)(a) (prohibiting discrimination based on "actual or perceived . . . disability"); *O'Connor v. Smith & Laquercia, LLP*, No. 08-CV-4559 (ENV)(MDG), 2010 WL 3614898, at *7 (E.D.N.Y. Sept. 9, 2010) (finding that defendant had no duty to provide reasonable accommodation where it was not "aware of or perceived any disability").

The NYCHRL "imposes the obligation to provide accommodations even in the absence of a specific request so long as the employer knew or should have known about Plaintiff's disability." *Patterson v. EmblemHealth Inc.*, No. 22-CV-2177-LTS, 2023 WL 5671531, at *7 (S.D.N.Y. Sept. 1, 2023) (internal quotation marks omitted).  In other words, "the NYCHRL  creates an independent duty to investigate feasible accommodations . . . even in the absence of a specific request . . . provided that the disability is known or should have been known by the [employer]." *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13-CV-4993 (LGS), 2014 WL 2933190, at *17 (S.D.N.Y. June 27, 2014).

Defendants perceived Plaintiff as having a disability, but did not investigate or discuss with him any accommodation to enable him to perform his duties.  Instead, Defendants shut the door on Plaintiff's future employment completely, stating that they did not want to risk something happening to him in the future while at work.  (Compl. ¶ 38.)  Accordingly, Plaintiff has sufficiently shown Defendants' liability for failure to provide reasonable accommodation claim under the NYCHRL.

## V.    Requested Relief

### A.    Relief under the ADA, NYSHRL, and NYCHRL

Plaintiff requests: (1) back pay under the ADA, NYSHRL, and NYCHRL (Mem. at 12), (2) prejudgment interest on back pay under the NYCHRL (Mem. at 13), (3) front pay under the ADA (Mem. at 13-14), (4) emotional distress damages under the ADA, NYSHRL, and NYCHRL (Mem. at 14-16), (5) punitive damages under the NYCHRL (Mem. at 16), and (6) post-judgment interest under 28 U.S.C. § 1961(a) (Mem. at 16-17.)

### 1.    <u>Back Pay under the ADA, NYSHRL, and NYCHRL</u>

A plaintiff who has proven an unlawful termination under the ADA, NYSHRL, and NYCHRL is entitled to back pay "from the date of her termination until the date of judgment." *Morse v. JetBlue Airways Corp.*, No. 09-CV-5075 KAM MDG, 2014 WL 2587576, at *3 (E.D.N.Y. June 9, 2014)

(quoting *Meling v. St. Francis Coll.*, 3 F. Supp. 2d 267, 275 (E.D.N.Y. 1998)). An award of back pay is designed to make plaintiffs whole and "completely redress the economic injury the plaintiff has suffered as a result of discrimination." *Id.*

Plaintiff requests back pay for the period from when he was terminated on August 25, 2022, until he found comparable employment on January 25, 2023. (Moreno Supp. Aff. ¶ 15.) Plaintiff is entitled to back pay for this period. *See Clarke v. Frank*, 960 F.2d 1146, 1151 (2d Cir. 1992) ("An employee is generally entitled to back pay from the date of his wrongful termination to the date the discrimination is rectified.").

Plaintiff states that he was paid $1,870.00[3] per week before he was terminated. (Moreno Supp. Aff. ¶ 15.) I calculate Plaintiff's back pay by multiplying his weekly pay by the number of weeks that he was unemployed, i.e., 22 weeks, which equates to $41,140.00.

Accordingly, I respectfully recommend that Plaintiff be awarded **$41,140.00** in back pay.

### 2.    Prejudgment Interest on Back Pay under the NYCHRL

Plaintiff seeks prejudgment interest under the NYCHRL. Prejudgment interest is available on back pay awards under the NYCHRL. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 94 (E.D.N.Y. 2020); *Yunganaula*, 2021 WL 5993622, at *16 n.15.

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." "When calculating prejudgment interest on economic damages, courts in the Second Circuit have used the midpoint of the economic damages

---

[3] ($34 hourly rate x 40-hour work week) + ($51 overtime hourly rate x 10 hours of overtime per week) = $1,870 weekly wage for a 50-hour work week.

period as the starting date and compounded interest annually." *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2024 WL 898654, at *5 (S.D.N.Y. Mar. 1, 2024).

 Plaintiff's back pay claims cover the period from August 25, 2022 through January 25, 2023, so the midpoint for purposes of calculating prejudgment interest is November 9, 2022. Plaintiff's back pay damages are **$41,140.00**. Prejudgment interest on those damages accruing at a rate of nine percent per year would accrue **$3,702.60** annually; this is equivalent to a daily interest rate of **$10.14**.

 Accordingly, I respectfully recommend that Plaintiff recover prejudgment interest at a daily rate of **$10.14** from November 9, 2022, through the date that judgment is entered.

### 3. <u>Front Pay under the ADA</u>

 Plaintiff seeks $15,000.00 in front pay under the ADA.[4] (Moreno Supp. Aff. ¶ 16.) Under the ADA, front pay is an available remedy "where reinstatement is inappropriate and a plaintiff has been unable to find another job, and where the fact-finder can reasonably predict that a plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Brady v. Wal-Mart Stores, Inc.*, No. CV 03-3843 (JO), 2005 WL 1521407, at *7 (E.D.N.Y. June 21, 2005) (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1182 (2d Cir. 1996)). "Front pay should not be awarded if the calculation method is unduly speculative," *Brady*, 2005 WL 1521407, at *7 (citing *Hine v. Mineta*, 238 F.Supp.2d 497, 501 (E.D.N.Y. 2003)), and as stated *supra*, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3.

 Plaintiff alleges that he is entitled to front pay "to compensate for the loss of career trajectory and advancement opportunities that [he] would have had at [Defendants' company]" because he was employed for over two years, "had established a strong relationship," was acknowledged as "an

---

[4] Plaintiff initially sought a front pay award of $132,600 (Mem. at 14), but this amount is deemed withdrawn.

excellent worker," and was "positioned for potential wage increases, additional responsibilities, and career advancement within the company." (Moreno Supp. Aff. ¶ 16.) However, Plaintiff's calculation for $15,000.00 is purely speculative and is not supported by any factual basis. Plaintiff also fails to present any documentary evidence or detailed affidavits sufficient to support a finding that he had a reasonable prospect of more successful "career trajectory" and "advancement opportunities" with higher wages at Defendants' company. Moreover, Plaintiff does not suffer from a continuing economic loss because he was able to secure comparable alternative employment where he works similar hours and earns the same hourly rate. (*Id.* ¶ 15.)

Accordingly, I respectfully recommend that Plaintiff's request for front pay be denied.

### 4.  Emotional Distress under the ADA, NYSHRL, and NYCHRL

Plaintiff seeks "significant emotional distress damages—at least in the six-figure range—to address the harm Defendants caused to him." (Mem. at 14.) Emotional distress damages are available under the ADA, NYSHRL, and NYCHRL. *See Kamiel v. Hai St. Kitchen & Co. LLC*, No. 19-CV-5336 (PAE)(SDA), 2020 WL 1916534, at *5 (S.D.N.Y. Mar. 17, 2020), *R&R adopted*, 2020 WL 1911193 (S.D.N.Y. Apr. 20, 2020); *Angulo v. 36th St. Hosp. LLC*, No. 19-CIV-5075 (GBD) (SLC), 2020 WL 4938188, at *12 (S.D.N.Y. July 31, 2020), *R&R adopted*, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020).

Courts in the Second Circuit generally categorize emotional distress damages as "garden-variety," "significant," or "egregious." *See Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 126 (2d Cir. 2024). "Garden variety" claims are often ones for which a plaintiff "did not seek medical treatment," while "significant" claims are "usually evidenced through medical testimony or documentation," and "egregious" cases are ones "where the discriminatory conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected." *Antoine*, 489 F. Supp. 3d at 96-97. "Courts apply this framework when determining a damages award on a default judgment motion as well as when evaluating the propriety of a jury award." *Yunganaula*, WL 5993622, at *16.

"Garden-variety claims generally merit $30,000.000 to $125,000.00 awards," and "claims categorized as significant, based on more substantial harm or more offensive conduct, generally support damages awards ranging from $50,000 to $200,000, although awards of up to $500,000 may also be upheld under some circumstances." *Qorrolli*, 124 F.4th at 126 (cleaned up). Some courts in the Second Circuit have relied on different ranges when determining damages for garden-variety claims in default judgments. *See, e.g., Kamiel*, 2020 WL 1916534, at *6 ($5,000 to $35,000); *Yunganaula*, WL 5993622, at *17 ($6,500 to $46,000 after adjusting for inflation); *McDaniel v. Scotch & Soda Retail LLC*, No. 23-CV-7859 (DLC), 2025 WL 401108, at *2 (S.D.N.Y. Feb. 4, 2025) ($5,000 to $125,000).

Plaintiff attests that he has "severe depression and anxiety," "frequently feels hopeless about [his] future and worry about [his] ability to support [his] family," and "suffer[s] from chronic insomnia and frequent nightmares about returning to work." (Moreno Supp. Aff. ¶¶ 7-8.) He has also experienced loss of self-worth and confidence, financial stress, and "intense fear and humiliation when thinking about [his] termination and the way [he] was treated." (*Id.* ¶¶ 9-11.) In addition, he experiences "physical symptoms including headaches, stomach problems, loss of appetite, and increased cardiac symptoms that require ongoing monitoring by [his] physician," "increased [social] isolation and loneliness," all of which are ongoing and "have not diminished over time." (*Id.* ¶¶ 12-14.) These claims are based solely on his Complaint and Affidavits and are not supported by any medical testimony or documentation that illustrates the severity or consequences of his emotional distress. Further, he does not attest that he sought any medical or mental health treatment as a result of his emotional distress. Plaintiff's testimony, therefore, presents garden-variety emotional distress and warrants an award of damages at the low end of the range set forth in *Qorrolli*, 124 F.4th at 126.

Accordingly, I respectfully recommend that Plaintiff be awarded **$30,000.00** in emotional distress damages. *See, e.g., Yunganaula*, 2021 WL 5993622, at *18 (awarding $30,000 in emotional distress damages where plaintiff, who was terminated shortly after suffering serious stroke, alleged

feelings of sadness, anxiety, and shame); *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 153-54 (E.D.N.Y. 2013) (awarding $30,000 in emotional distress damages where plaintiff alleged humiliation, irritability, weight loss, severe anxiety, and depression); *McDaniel v. Scotch & Soda Retail, LLC*, No. 23-CIV-7859 (DLC)(RFT), 2024 WL 5456912, at *17 (S.D.N.Y. Nov. 22, 2024) (recommending award of $30,000 where plaintiff who experienced twenty-pound weight loss due to depression and anxiety), *R&R adopted*, 2025 WL 401108 (S.D.N.Y. Feb. 4, 2025).

### 5.   **Punitive Damages**

Plaintiff requests punitive damages on the grounds that Defendants treated Plaintiff with "hostility . . . without any regard for him," which involved "ingredients of malice, fraud, oppression, insult, wanton or reckless disregard of [Plaintiff's] rights." (Mem. at 16.)

"An award of punitive damages in an ADA case requires a showing 'that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 137 (2d Cir. 2008) (quoting 42 U.S.C. § 1981a(b)(1)).  Punitive damages are not available under the NYSHRL.  *See Chauca v. Abraham*, 841 F.3d 86, 95 (2d Cir. 2016).  Under the NYCHRL, a punitive damages award requires a showing of "a high degree of moral culpability."  *Edelman v. NYU Langone Health Sys.*, No. 24-251-CV, 2025 WL 1699582, at *7 (2d Cir. June 18, 2025) (quoting *Home Ins. Co. v Am. Home Prods. Corp.*, 550 N.E.2d 930 (N.Y. 1990)).

I find that Defendants' conduct does not to rise to the level sufficient to warrant punitive damages.  Plaintiff does not allege any facts showing that Defendants acted with "malice," *Brady*, 531 F.3d 127, 137, or "a high degree of moral culpability."  *Edelman*, 2025 WL 1699582, at *7.  Plaintiff alleges that he was terminated because Defendants did not "want to risk something happening to [him] in the future while at work and that [he is] going to say is the companies['] fault." (Compl. ¶ 38.)  While clear-cut, such allegations do not show that Defendants acted with "malice and utter

22

disregard for plaintiff's rights," or that they engaged in "personally reprehensible" conduct. *Antoine*, 489 F. Supp. 3d at 101.

Accordingly, I respectfully recommend that Plaintiff's request for punitive damages be denied.

### 6.    Post-Judgment Interest under the 28 U.S.C. § 1961(a)

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment"). Accordingly, I recommend that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### B.    Attorneys' Fees and Costs

Plaintiff requests attorneys' fees and costs. (Mem. at 17-21.) The ADA provides for a discretionary award of a "reasonable attorney's fee, including litigation expenses, and costs" to a prevailing party. 42 U.S.C. § 12205.

### 1.    Attorneys' Fees

"[T]o determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *R&R adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP)(WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005).

The Second Circuit bases fee awards on the "presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts calculate the presumptively reasonable fee

according to the "lodestar" method by "multiplying the number of hours reasonably billed . . . by the appropriate hourly rate." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 n.4 (2d Cir. 2008).

Courts determine reasonable attorneys' fees based on several factors, including labor and skill required, the complexity of the issues, counsel's customary hourly rate, counsel's experience, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). Courts also apply "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons*, 575 F.3d at 174 (quotations and citation omitted). When adjusted for inflation, the forum rates in the Eastern District have recently been found to be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals. *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

Plaintiff's counsel requests attorneys' fees in the amount of $4,215.00 (Mem. at 17; Vo Decl. at 4, Dkt. 21) based on the following hourly rates: $550 for Partner Brittany Stevens[5]; $400 for Senior Associates Shawn Clark[6] and Melissa Vo[7]; and $150 for paralegal services. (Vo Decl. at 4.)

These hourly rates fall within the range of rates found reasonable in other cases for attorneys with similar experience in ADA cases. *See, e.g., Jaquez v. Brilliant Home Tech., Inc.*, No. 20-CV-9855 (KPF) (SDA), 2022 WL 951108, at *5 (S.D.N.Y. Mar. 30, 2022) (awarding hourly rate of $400 to attorney with 10 years of experience in ADA default case); *Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (awarding hourly rates of $600 and 550 for attorneys with over a decade of experience in civil rights litigation).

The hours billed by counsel for Plaintiff are also reasonable. Each individual entry devotes an

---

[5] Ms. Stevens was admitted to practice in 2014.

[6] Mr. Clark was admitted to practice in 2011.

[7] Ms. Vo was admitted to practice in 2018.

appropriate amount of time towards completing the corresponding task, and there are no excessive or duplicative hours.  (Dkt. 21-8.)

Accordingly, I respectfully recommend that Plaintiff be awarded **$4,215.00** in attorneys' fees for the 17.7 hours reasonably expended in this matter.

### 2.    Costs

Plaintiff seeks $737.31 in costs, comprised of $405 for the filing fee, $208.50 for service of process, and $123.81 for mailing costs.  (Mem. at 17; Dkt. 21-7.)  "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable."  *Hernandez v. Delta Deli Market Inc.,* No. 18-CV-00375 (ARR)(RER), 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (quoting *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)).

Plaintiff has provided adequate documentation of the requested costs.  (Advance Costs Balance, Dkt. 21-7.)  Accordingly, I respectfully recommend that Plaintiff be awarded **$737.31** in costs.

### CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted in part and that Plaintiff be awarded damages as follows:

1. Back pay in the amount of $41,140.00, together with pre-judgment interest;

2. $30,000.00 in emotional distress damages;

3. $4,215.00 in attorneys' fees;

4. $737.31 in costs; and

5. Post-judgment interest.

I respectfully recommend that Plaintiff's requests for front pay and punitive damages be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within

the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          August 13, 2025